UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RED RIVER AIRCRAFT LEASING, LLC,  )
                                  )
            Plaintiff,            )
                                  )   CIVIL ACTION NO.
VS.                               )
                                  )   3:16-CV-3350-G
JETBROKERS, INC.,                 )
                                  )
            Defendant.            )

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant JetBrokers, Inc. ("JetBrokers") for summary judgment (docket entry 30). For the reasons stated below, the defendant's motion is granted.

## I. BACKGROUND

This case is about the purchase of a used Socata TBM 700B[1] aircraft (the "aircraft"). *See* Defendant's Brief in Support of its Motion for Summary Judgment ("JetBrokers' Brief") at 2 (docket entry 31). In January 2016, the plaintiff Red River

---

[1] During the deposition of James R. Wikert ("Wikert"), Red River's Chief Executive Officer, he clarified that the aircraft in question is not a Socata TBM 700S -- as the amended complaint and other pleadings suggest -- but a Socata TBM 700B. *See* Defendant's Appendix in Support of its Motion for Summary Judgment ("JetBrokers' Appendix") at 14, 81 (docket entry 32).

Aircraft Leasing, LLC ("Red River") purchased the aircraft from the Bank of Utah for $950,000. *See* JetBrokers' Appendix at 81. JetBrokers acted as the seller's broker and, accordingly, served as an intermediary between the bank and Red River throughout the course of negotiations and the ultimate transaction. *See* JetBrokers' Brief at 3; *see also* Plaintiff's Amended Complaint ¶ 5 (docket entry 23).

The plaintiff, Red River, is a Texas for-profit corporation that buys, sells, leases, and trades aircraft. Plaintiff's Amended Complaint ¶ 2. Red River has a place of business and a registered agent located in Dallas, Texas. *Id.* The defendant, JetBrokers, is a for-profit corporation in the business of providing brokerage services concerning the sale and purchase of aircraft. Defendant's Answer to Plaintiff's First Amended Complaint ("JetBrokers' Amended Answer") ¶ 3 (docket entry 24). JetBrokers is incorporated under the laws of Nevada, with its principal place of business in Chesterfield, Missouri. *Id.*; *see also* Defendant's Supplement to Notice of Removal ¶ 2 (docket entry 8).

According to Red River, the conduct of Jeremy R. Cox ("Cox"), JetBrokers' Vice President, was the impetus for this suit. In particular, Red River avers that as the broker for its transaction with the bank, Cox misinformed Red River about maintenance items related to the aircraft. Plaintiff's Amended Complaint ¶ 5. Red River acknowledges that it became aware of damage to the aircraft -- specifically, hail damage to the left hand aileron, right hand aileron, left hand flap, right hand flap,

left hand elevator, and right hand elevator -- during the course of negotiations. *Id.* ¶ 6. But, Red River contends, Cox assured it, both orally and in writing, that the damaged parts were repairable. *Id.* Despite his assurances, Red River maintains that during the negotiations Cox knew or had reason to believe that the parts were in fact not repairable. *Id.* ¶ 8. Unaware of this alleged misrepresentation, Red River asserts that it relied in good faith on Cox's assurances and entered into an agreement to purchase the aircraft. *Id.* ¶ 6.

After taking possession of the aircraft, Red River learned that the parts in question were not repairable. *Id.* ¶ 9. In fact, according to Red River, the aircraft has been unable to fly since shortly after closing. *Id.* In Red River's view, JetBrokers' actions have led to "significant loss by way of costs and labors to replace the [d]amaged [p]arts, loss of a sale to a third party, and other [d]amages." *Id.*

In light of this alleged damage, on October 28, 2016, Red River filed suit in the 44th Judicial District Court of Dallas County, Texas. Defendant's Notice of Removal ("Notice of Removal") ¶ 1 (docket entry 1). In its original state court petition, Red River asserted three causes of action as the basis for this suit: (1) negligence; (2) negligent misrepresentation; and (3) fraud by non-disclosure. Original Petition ¶¶ 11-29 (docket entry 1-5, exhibit D-1). Red River further specified that it seeks "in excess of $184,000" for the cost of replacing the damaged parts, and "in excess of $25,000" for the cost of maintaining the aircraft during the time which it

has remained incapacitated. *Id.* ¶ 10.

On December 2, 2016, JetBrokers removed the case to this court, alleging diversity of citizenship as the basis for this court's subject matter jurisdiction. On March 23, 2017, Red River filed an amended complaint dropping its fraud by non-disclosure claim. *See* Plaintiff's Amended Complaint ¶¶ 11-20. Shortly thereafter, on April 5, 2017, JetBrokers filed an answer to the amended complaint. JetBrokers' Amended Answer.

On December 7, 2017, JetBrokers filed a motion for summary judgment under Federal Rule of Civil Procedure 56. Defendant's Motion for Summary Judgment (docket entry 30); Jet Brokers' Brief; JetBrokers' Appendix. On December 28, 2017, Red River filed a response to JetBrokers' motion. Plaintiff's Response to Defendant's Motion for Summary Judgment ("Red River's Response") (docket entry 33); Plaintiff's Brief in Support of its Response to Defendant's Motion for Summary Judgment ("Red River's Brief") (docket entry 34). JetBrokers filed a reply on January 18, 2018. Defendant's Reply Brief in Support of its Motion for Summary Judgment ("JetBrokers' Reply") (docket entry 38). JetBrokers' motion is now ripe for decision.

## II. ANALYSIS

### A. Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[ ] that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1).[2]  A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").  To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in its favor.  *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)).  However, it is not

---

[2] Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

B. Application

From the outset, it is important to note that while Red River's amended complaint contains a state law negligence claim, Red River has recently conceded that summary judgment on its negligence claim is appropriate. *See* Red River's Response ¶ 2 ("Plaintiff does not oppose Defendant's motion for summary judgment on its negligence claim and concedes that summary judgment on this claim is proper."). Accordingly, the only remaining cause of action for the court to consider, with respect to JetBrokers' motion for summary judgment, is Red River's negligent misrepresentation claim. *See* Plaintiff's Amended Complaint ¶¶ 15-20.

With respect to the tort of negligent misrepresentation, Texas follows the approach set forth in the RESTATEMENT (SECOND) OF TORTS § 552 (1977). See *Federal Land Bank Association of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Thus, under Texas law, "[t]o prevail on a cause of action for negligent misrepresentation, a plaintiff must show: (1) a representation made by a defendant in the course of its business or in a transaction in which it has a pecuniary interest; (2) the representation conveyed false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *JPMorgan Chase Bank, National Association v. Orca Assets G.P., L.L.C.*, __ S.W.3d__, 2018 WL 1440625, at *4 (Tex. Mar. 23, 2018) (quoting *Sloane*, 825 S.W.2d at 442) (internal quotation marks omitted).

In its summary judgment motion, JetBrokers begins by addressing the fourth requirement for a successful negligent misrepresentation claim. Specifically, JetBrokers contends that Red River effectively waived any right to claim that it justifiably relied upon Cox's alleged representations because (1) the purchase agreement specifies that Red River was buying the aircraft "as is," and (2) Red River acknowledged in the purchase agreement that it relied solely upon its own investigation[3] in deciding to go forward with the transaction. *See* JetBrokers' Brief at 7-8. It appears that JetBrokers bases these contentions on the following language

---

[3] It is worth noting that the parties do not dispute that Red River hired Cutter Aviation to perform a pre-buy inspection of the aircraft. JetBrokers' Brief at 9; *see also* Red River's Brief ¶ 5.

from paragraph nine of the purchase agreement:

> <u>Limited Warranty</u>. . . . Except for Seller's warranty of title . . . BUYER ACCEPTS AND ACKNOWLEDGES THE AIRCRAFT IS SOLD AND DELIVERED "AS IS," "WHERE IS" AND "WITH ALL FAULTS" AND BUYER AGREES AND ACKNOWLEDGES THAT, SAVE AS EXPRESSLY STATED IN THIS AGREEMENT, SELLER WILL NOT HAVE ANY LIABILITY IN RELATION TO, AND SELLER HAS NOT NOR WILL BE DEEMED TO HAVE MADE OR GIVEN ANY WARRANTIES OR REPRESENTATIONS, EXPRESS OR IMPLIED, WITH RESPECT TO THE AIRCRAFT, INCLUDING BUT NOT LIMITED TO:
>
> (a) THE DESCRIPTION, AIRWORTHINESS, MERCHANTABILITY, FITNESS, FOR ANY USE OR PURPOSE, VALUE, CONDITION OR DESIGN OF THE AIRCRAFT OR ANY PART; OR
>
> (b) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT, WHETHER OR NOT ARISING FROM SELLER'S NEGLIGENCE, ACTUAL OR IMPUTED; OR
>
> (c) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF OR DAMAGE TO THE AIRCRAFT . . . . BUYER ACKNOWLEDGES THAT IN ACCEPTING THE AIRCRAFT OWNER BUYER HAS RELIED SOLELY UPON ITS OWN INVESTIGATION OF THE AIRCRAFT.

JetBrokers' Appendix at 82-83 (emphasis in original).

As further support for its argument that Red River effectively waived any claim of justifiable reliance, JetBrokers cites *Larsen v. Carlene Langford & Associates, Inc.*, 41 S.W.3d 245 (Tex. App.--Waco 2001, pet. denied). *See* JetBrokers' Brief at 9;

JetBrokers' Reply at 2-3. In *Larsen*, two home purchasers sued a real estate broker, claiming that the broker engaged in fraud, negligently misrepresented the condition of the home, and also violated the Deceptive Trade Practices Act during its representation of a vendor through the vendor's transaction with the home purchasers. *Id.* at 248. After the trial court entered summary judgment on their claims, the home purchasers appealed. *Id.*

When considering the home purchaser's negligent misrepresentation claim, the appellate court looked to the specific terms of the purchase agreement. In particular, the court noted the presence of "as is" clauses in the contracts. *Id.* at 252. Because the home purchasers and the broker negotiated the terms of the agreements at arm's length and were of equal bargaining strength and similar levels of sophistication, the court determined, the "as is" portions of the contracts were valid under Texas law. See *id.* (citing *Prudential Insurance Company of America v. Jefferson Associates, Limited*, 896 S.W.2d 156, 160-62 (Tex. 1995)).

Continuing, the court in *Larsen* then found that while the broker was not technically a party to the contracts containing the "as is" clauses -- and, indeed, the home purchasers' claim sounded in tort rather than contract law -- the presence of the clauses "unambiguously demonstrated" the home purchasers' agreement "to rely solely upon themselves, their own inspections or inspectors they chose." *Id.* at 253. As such, the court concluded, "[t]he 'as is' clauses conclusively negate[d] the reliance

element which is essential to recovery on all the theories the [home purchasers] assert[ed]," including their claim for negligent misrepresentation. *Id.*

In its response, Red River provides two primary arguments challenging JetBrokers' position. First, without directly addressing the *Larsen* opinion, Red River contends that this court should simply disregard the "as is, where is" language because JetBrokers was not a party to the purchase agreement. *See* Red River's Brief ¶ 8. Second, Red River maintains that there exists a fact question on the issue of justifiable reliance because Wikert stated in his deposition that Red River's decision to go forward with the transaction was not solely based on Red River's investigations and inspections of the aircraft, but also on the representations of JetBrokers. See *id.* ¶¶ 12, 16.

The court does not find Red River's arguments persuasive. As JetBrokers suggests, it appears that *Larsen* is directly on point. *See* JetBrokers' Brief at 9 ("*Larsen* is nearly identical to the instant matter."). Like JetBrokers, the broker in *Larsen* was not a party to the contracts containing the "as is" language. See *Larsen*, 41 S.W.3d at 252 n.2 (specifying that the contracts were not between the home purchasers and the broker, but between the home purchasers and the Barreras). Even so, under the factual circumstances presented in *Larsen*, the Texas appellate court gleaned from those contracts the home purchasers' intent to be bound by a pledge to rely solely upon their own investigations. *Id.* at 253. Accordingly, while the home purchasers'

negligent misrepresentation claim implicated tort law rather than contract law, this intent, derived from the contractual language and surrounding circumstances, led the appellate court to conclude that the home purchasers had effectively waived any argument that they justifiably relied upon any of the broker's alleged misrepresentations. See *id.* Similarly, here, the purchase agreement contains clear language evincing Red River's intent to be bound by a pledge to rely solely on its own investigation. And, because it appears that the parties transacted at arm's length and were of relatively equal bargaining power and sophistication, the court concludes that the language in the purchase agreement conclusively negates the reliance element of Red River's negligent misrepresentation claim.

The *Larsen* opinion does not stop there, however; the appellate court continued on to address the applicability of the *Prudential* exception. *Id.* In *Prudential*, the Texas Supreme Court qualified its view of "as is" clauses. See *Prudential*, 896 S.W.2d at 162. Specifically, under the *Prudential* exception, "[a] buyer is not bound by an 'as is' agreement if proof of fraudulent inducement . . . by the seller is shown" and, further, "[i]n the context of a summary judgment proceeding, fraudulent inducement is in the nature of a counter-defense responding to the defense raised by the seller." *Larsen*, 41 S.W.3d at 253.

To the extent that Red River indirectly invokes *Prudential*, the court concludes that the exception does not apply in this case. From the record, it appears that Red

River relies heavily on the following language from an email sent by Cox to Wikert on January 21, 2016: "Socata inspected and mapped [the hail damage] Jim, and reported that it is well within limits . . . I took the pictures that we are using online to advertise the aircraft, and I had to look really hard to see any dents – honestly." JetBrokers' Appendix at 41; *see also* Plaintiff's Appendix of Exhibits in Support of its Response Brief to Defendant's Motion for Summary Judgment at 36 (docket entry 34-1). But the court can find no evidence in the record to suggest that when Cox made this -- or any other -- representation he knew it was false or that he made it recklessly as a positive assertion without knowledge of its truth. See *Larsen*, 41 S.W.3d at 253-54. Indeed, from its response, it is evident that Red River's assertion is that Cox was negligent -- rather than fraudulent or reckless -- in making his representations. *See* Red River's Brief ¶ 12 ("Cox took it upon himself to 'correct' or attempt to correct the [a]ircraft's log book post-sale . . . . At a minimum, these facts establish [that] the [d]efendant did not exercise reasonable care in obtaining/communicating the true state of hail damage to the [a]ircraft at the time of sale. . . ."). As such, the *Prudential* exception cannot save Red River's negligent misrepresentation claim.

In sum, because the language of the purchase agreement conclusively negates an essential element of Red River's only remaining claim and Red River cannot rely on the *Prudential* exception to salvage that claim, the court concludes that Red River

has not demonstrated that the evidence here is sufficient to support the resolution of the material factual issues in its favor. See *Anderson*, 477 U.S. at 249.

### III. CONCLUSION

Therefore, for the reasons stated above, JetBrokers' motion for summary judgment on Red River's claim is **GRANTED**. Judgment will be entered for JetBrokers.

**SO ORDERED.**

May 21, 2018.

*C. Joe Fish*
**A. JOE FISH**
**Senior United States District Judge**